Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edward A. Bobrick | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9026 | **DATE** | 11/19/2003 |
| **CASE TITLE** | Jones-Ward vs. JoAnne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's Motion for Summary Judgment [26-1] is granted and Plaintiff's Motion for Summary Judgment or Remand [21-1] is denied. Enter Memorandum Order.

*/s/ Edward B.*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | NOV 25 2003 | Document Number |
| ✓ | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 11/19/2003 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| SRB | courtroom deputy's initials | Date/time received in central Clerk's Office | SB mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERONICA JONES-WARD, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JO ANNE BARNHART, Commissioner ) <br> of Social Security, ) <br> ) <br> Defendant. ) | No. 01 C 9026 <br> Edward A. Bobrick, <br> Magistrate Judge <br><br> DOCKETED <br> NOV 2 5 2003 |

## MEMORANDUM ORDER

Plaintiff Veronica Jones-Ward brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

### I. BACKGROUND

Plaintiff filed an application for DIB and SSI on April 22, 1999, alleging she was disabled since December 5, 1997, as a result of lower back pain. (Administrative Record ("R.") at 113-115). Her application was denied at the initial levels of administrative review, and she requested an administrative hearing. On December 6, 2000, an administrative law judge ("ALJ") conducted a hearing at which plaintiff appeared, was represented by counsel, and testified. (R. 30-70). After considering all the evidence of record, in a decision dated April 10, 2001, the ALJ found that plaintiff was not disabled because she retained the ability to perform a full range of sedentary work. (R. 12-23).

This became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review of the decision on September 20, 2001. (R. 9).

## A. Evidence of Record

Plaintiff was born on January 8, 1963, making her thirty-eight years old at the time of the ALJ's decision in this case. (R. 110). She is 5'3.5" tall and weighs 142 pounds. (R. 245). She has an associate college degree. (R.35, 245). Plaintiff has worked as a kindergarten teacher's aide, a clerk for the Chicago Board of Education, and a pre-school child-care worker. (R. 132). She injured her back at this last job in December of 1997, and received a $1250 Workers' Compensation settlement. (R. 119-120). It is unclear whether she returned to work, however briefly, after that date. (R. 38-39, 119).

Plaintiff went to the emergency room at Trinity Hospital on December 1, 1997, with complaints of low back pain radiating to her right flank. (R, 191-93). X-rays revealed probable hypertrophic facet degenerative change at the L5-S1 level of the spine. (R. 207). Plaintiff underwent a course of physical therapy approximately three times a week for about a month. (R. 209-238). There was slow but progressive improvement. (R. 214).

Dr. Mohammed Qureshi performed a consultative examination on March 13, 1998. There was tenderness present in the right paraspinal region. (R. 246). Forward flexion was limited to 80 degrees out of 90. (R. 246). Extension was just 5 degrees out of 30. (R. 246). Right hip flexion was limited to 80 degrees by back pain. (R. 246-47). Straight leg raising was positive with pain on the right side. (R. 246). Plaintiff's gait was antalgic.

2

(R. 246). Strength was normal in the left lower extremities, but 4/5 on the right, and plaintiff complained of pain which limited the testing. Deep tendon reflexes were 1+ and sensation was intact. (R. 246). Dr. Qureshi felt the possible diagnosis was prolapsed intervertebral disc and degenerative disc disease. (R. 246). Based on the medical record at that point, Dr. Robert Patey was of the opinion that plaintiff could perform medium work. (R. 248-254).

On June 11, 1998, plaintiff went to Roseland Community Hospital with complaints of severe low back pain. (R. 255). X-rays revealed no obvious bone or joint abnormalities. (R. 260). In March of 1999, plaintiff reported to the Cook County Hospital emergency room with muscle spasms in her back. (R. 262). Reflexes and sensation were normal, but range of motion was limited by pain. (R. 264).

Plaintiff underwent another consultative examination on June 24, 1999. Dr. Qureshi found some tenderness in the lumbosacral region on the right side. (R. 267). Straight leg raising was positive on the right side for pain at 70 degrees. (R. 267). Forward flexion was 80 degrees; right and left lateral flexion was about 20 degrees. (R. 267). Plaintiff walked with a limp on the right side. (R. 267). Strength was normal in the left lower extremity, and 4 to 4+/5 in the right lower extremity. (R. 268). Deep tendon jerks were absent in the knee and ankle. (R. 268). Arm and grip strength were normal. (R. 268). Lumbar spine x-rays showed accentuation of the normal lordotic curve, but no disc narrowing or spondylolisthesis. (R. 276). There was possible degenerative

joint change in the lower lumbar region, mainly on the right side. (R. 276). Dr. Patey conducted a second review of plaintiff's medical record and, again, found her limited to performing medium work. (R. 286-93).

Plaintiff also underwent a psychiatric evaluation. On June 25, 1999, Dr. Elouisa Dizon noted that plaintiff was taking Trazadone and Zoloft, although plaintiff did not think she was depressed. (R. 270). Plaintiff stated there was nothing wrong with her head, only her back. (R. 274). She was able to maintain care of her foster child, and appeared to be intelligent and well-organized. (R. 275). She was able to comprehend and carry out instructions, limited only by her back pain. (R. 275). Dr. Dizon felt plaintiff had an adjustment reaction, with depressed mood. (R. 274). Plaintiff's Global Assessment of functioning rating ("GAF") was 65.[1] (R. 274). Based on Dr. Dizon's assessment, Erika Altmen, Ph.D. completed a review form of plaintiff's psychiatric condition. She felt plaintiff's depression was not a severe impairment, and resulted in only slight limitations in daily activities, social function, and concentration. (R. 277, 284). There was no deterioration or decompensation in work. (R. 284). An MRI of plaintiff's lumbar spine

---

[1] The GAF scale reports a "clinician's assessment of the individual's overall level of functioning." *Sims v. Barnhart*, 309 F.3d 424, 427 (7th Cir. 2002), *citing* American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 1994). A GAF score of 60 reflects moderate symptoms or "moderate difficulty in social, occupational, or school functioning." *Id.* A GAF score of 61-70 reflects mild symptoms or "some difficulty" in those areas, but the individual "generally function[s] pretty well. *Id.*

4

performed on August 25, 2000, revealed very minor degeneration of the discs at L3-4, L4-5, and L5-S1. There was no evidence of stenosis or disc herniation. (R. 357).

At her administrative hearing, plaintiff testified that she is unable to work because she has problems sitting or standing for periods of time. (R. 46). She experiences back pain that radiates up to her shoulders and down to her feet. (R. 46). Plaintiff claimed she could sit comfortably for no more than 45 minutes, and then would have to lay down if she were at home. (R. 51). She thought she could stand for only about the same amount of time, and walk about a block. (R. 53). Plaintiff further testified that she spends "80 to 85% her waking day laying down." (R. 53). She stated that she could lift a gallon of milk, but not without pain. (R. 54). Plaintiff arrived at the hearing using a cane, but it was unclear whether it had been prescribed. (R. 55). Plaintiff testified that certain of the medications she took for her pain made her drowsy. (R. 51-52, 55). Plaintiff indicated that she had seen a psychiatrist for depression, but no longer was. (R. 57). She was no longer taking medication for her depression because it aggravated her muscle spasms. (R. 58). She felt she had no psychological problem; that her back condition was her problem. (R. 59).

Much of the remainder of the hearing was a conversation between plaintiff's counsel and the ALJ on the subject of the minimal findings in plaintiff's medical records. (R. 49-51, 61-66). Essentially, the ALJ indicated that the objective medical findings, especially the MRI, did not suggest a condition that was commensurate with plaintiff's complaints.

(R.61-64). Plaintiff's counsel seemed to agree that there was a problem with the medical evidence failing to demonstrate a serious condition. (R. 62, 64). He had a difficult time characterizing plaintiff's case as one of pain or one of psychological problems. (R. 61, 66).

Dr. James Elmes performed a consultative examination of plaintiff on January 16, 2001. (R. 360). At that time, plaintiff had gained fifty pounds and weighed 176. (R. 361-62). Plaintiff claimed to use a walker around her house and a cane when she went out, including the day of the examination. (R. 361-62). Upper and lower extremity strength were 4/5. (R. 362). Sensation in upper extremities was normal, but there was a slight decrease in the right foot and great toe. (R. 363). Deep tendon reflexes were reduced throughout, with Achilles' reflex absent bilaterally. (R. 363). Shoulder range of motion was 160 degrees out of 180 bilaterally. (R. 369). Lumbar spine flexion was 60 degrees out of 90, and extension was zero. (R. 369). Cervical spine flexion was 50 degrees out of 60, and extension was 45 degrees out of 60. (R. 369). Hip flexion was slightly limited. (R. 369). There was tenderness at L5 and mild paravertebral spasm. (R. 363). Straight leg raising was positive. (R. 363). Dr. Elmes felt plaintiff was limited to two hours of standing and walking in a work-day, and could lift and carry ten pounds frequently. (R. 364). He thought plaintiff should alternately sit and stand for relief of pain while working, and could push and pull on a limited basis. (R. 364).

Plaintiff underwent another consultative examination that day, conducted by Dr. Claude Hamilton. (R. 371). He noted plaintiff was tearful and depressed about her back problems. (R. 373). Dr. Hamilton thought plaintiff might have early degenerative joint disease, but found no evidence of radiculopathy. (R. 376). He did, however, suspect that plaintiff had lumbosacral nerve root irritation on the right side. (R. 376). There was decreased range of motion in the lumbar spine: 50 out of 90 degrees flexion, 5 out of 30 degrees extension. (R. 376). Plaintiff's gait was abnormal, but she was able to walk 50 feet without a cane. (R. 376). There were no sensory abnormalities, but there were minor motor findings–mild weakness on the right side–which may have been do to pain. (R. 374, 376). Deep tendon ankle reflexes were absent. (R. 376). Dr. Hamilton called plaintiff's prognosis "guarded," in that she would continue to have pain and discomfort. (R. 376). He felt that her complaints outweighed her physical findings. (R. 376). Dr. Hamilton estimated that plaintiff could lift twenty pounds occasionally, and ten pounds frequently, stand or walk for two hours of a work day, and sit for six hours. (R. 380-81).

On January 17, 2001, Bridget Stafford, Ph.D., conducted a consultative psychological examination of plaintiff, including administering an MMPI psychological test. (R. 383). Plaintiff's test scores suggested a possible schizophrenic disorder, dysthymia, and average intellectual functioning. (R. 386). Ms. Stafford felt plaintiff's abilities to follow work rules, use judgment, interact with supervisors, and function independently were good. (R. 387). She regarded plaintiff's abilities to relate to co-

7

workers, deal with the public, deal with work stress, and maintain concentration as fair. (R. 387). According to Ms. Stafford, plaintiff exhibited a fair ability to understand, remember and carry out complex instructions, and a good ability for those same capacities when faced with simple instructions. (R. 388). Plaintiff's ability to maintain her personal appearance was good, and her abilities to behave in an emotionally stable manner, relate predictably, and demonstrate reliability were fair. (R. 388).

## B. <u>ALJ's Decision</u>

After considering all the evidence of record, the ALJ determined that the plaintiff suffered from degenerative disc disease, which was a severe impairment, but that her depression was not severe. (R. 22). The ALJ further determined that plaintiff's impairments did not meet or equal an impairment list as disabling by the Commissioner's regulations. (R. 22). The ALJ also found that plaintiff's allegations of disabling pain were not fully credible. (R. 22). The ALJ determined that plaintiff retained the capacity to perform a full range of sedentary work. (R. 22). The Commissioner's regulations define sedentary work as:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a); 416.967(a). The ALJ then considered plaintiff's age, education, and work experience and employed the Medical-Vocational Guidelines to find that plaintiff was not disabled under the Act. (R. 22-23). This stands as the Commissioner's decision and is presently before this court for review. 42 U.S.C. § 405(g).

## II. ANALYSIS

The applicable standard of review of the Commissioner's decision is a familiar one. The Social Security Regulations provide a five-step inquiry to determine whether a plaintiff is disabled:

1) whether the plaintiff is currently employed;

2) whether the plaintiff has a severe impairment;

3) whether the plaintiff has an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;

4) whether the plaintiff can perform his past relevant work; and

5) whether the plaintiff is capable of performing work in the national economy.

20 C.F.R. §§ 404.1520; 416.920; *Zurawski v. Halter,* 245 F.3d 881, 885 (7th Cir. 2001). The burden of proof is the plaintiff's through step four; if it is met, the burden shifts to the Commissioner at step five. *Id.* Here, the ALJ determined, at step five, that the plaintiff could perform work in the national economy.

9

The court must affirm this decision if it is supported by substantial evidence. 42 U.S.C. § 1382(c)(3). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997), *citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). The court may not reweigh the evidence, or substitute its judgment for that of the Social Security Administration. *Binion*, 108 F.3d at 782. Where conflicting evidence would allow reasonable minds to differ as to whether the plaintiff is disabled, the Commissioner has the responsibility for resolving those conflicts. *Id.* Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Id.* The plaintiff finds fault with the ALJ's determination that her condition did not meet the Listings of Impairments, and his finding that she could perform sedentary work.

Plaintiff argues that the ALJ was not sufficiently thorough in his finding that plaintiff's condition did not meet a listed impairment. An ALJ is required to sufficiently articulate his assessment of the record to assure the court that he considered the important evidence and to enable the court to trace the path of his reasoning. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Here, near the beginning of his opinion, the ALJ discussed plaintiff's condition in relation to the listing of impairments:

> The third step of the sequential evaluation requires determining whether the claimant's condition meets the requirements or equals the level of severity contemplated for any impairment listed in the Appendix 1 to Subpart P, Regulations No. 4. In this case, the claimant's condition does not satisfy that standard. For example, the claimant has alleged significant pain in her back and right leg. The evidence does not reveal that any of the claimant's impairments meet or are medically equivalent to any of the musculoskeletal impairments in Section 1.00 et seq., in the listings of impairments in Appendix 1 to Subpart P of Regulations No. 4. Additionally, the evidence reveals that the plaintiff does not have any impairments which meet or are medically equivalent to any impairments listed in the mental impairments section of the listings (Section 12.00 et seq.). Even considering the combinations of the claimant's impairments, the level of severity does not equal that contemplated for any of the Appendix 1 impairments. Disability cannot be established at the third step of the sequential evaluation.

(R. 16). Were that the end of the ALJ's discussion, we might agree with the plaintiff that it is conclusory and tautological. The ALJ, however, discussed nearly every piece of medical evidence in the record relating to plaintiff's back impairment (R. 17-19), and her mental impairment. (R. 19-20). At the time of plaintiff's administrative hearing, the ALJ noted the dearth of objective medical evidence in the record to support plaintiff's complaints and ordered three consultative examinations. While his opinion might be lacking in organization, it cannot be said that the ALJ omitted the analysis of evidence pertinent to a step three evaluation.

Notably, in calling into question the ALJ's step three analysis, the plaintiff relies upon *Brindisi v. Barnhart*, 315 F.3d 783 (7th Cir. 2003). There, the court took an ALJ to task for a conclusory step three determination, in which the ALJ failed to mention a specific listing, failed to discuss the plaintiff's impairments, and ignored a significant piece

of medical evidence. 315 F.3d at 786-87. Here, the ALJ specifically referred to the listings for back and mental impairments, and not only discussed all the evidence, but took responsibility for procuring additional evidence. The medical evidence – minimal or minor findings in x-rays and an MRI, three consultative examinations suggesting a capacity for sedentary to medium work, and a psychiatric examination suggesting no severe impairment – simply does not establish that plaintiff's condition meets or equals a listed impairment.[2]

Plaintiff takes special issue with the ALJ's treatment of her depression with regard to the listings of impairments. According to plaintiff, she is entitled to an explanation why the findings of Dr. Dizon – adjustment reaction with depressed mood, unemployment, and GAF 65 – and those of Ms. Stafford – possible schizophrenic disorder, dysthymia, average intellectual functioning, and back pain – did not meet or equal one of the mental impairment listings. (*Plaintiff's Motion to Reverse*, at 14). Based on Dr. Dizon's findings, which included a GAF score indicative of mild symptoms, and the impressions of reviewing psychologist Ms. Altmen, the ALJ found that plaintiff's depression was not a severe impairment. (R. 19). Because plaintiff's depression did not amount to a severe impairment, it could not have met the listings under the sequential evaluation. *Zurawski*, 245 F.3d at 885.

---

[2] Plaintiff seems to suggest that it is the Commissioner's burden to establish that her condition does not meet or equal a listed impairment. (*Plaintiff's Reply*, at 2). The burden of proof is on the plaintiff, however, through step four. *Zurawski v. Halter*, 245 F.3d at 885.

12

The plaintiff also argues that the ALJ's determination that she retains the capacity to perform sedentary work is not supported by substantial evidence. She characterizes the ALJ's finding as a "fiat conclusion" for which he failed to adequately articulate his grounds. (*Plaintiff's Motion to Reverse,* at 17). The plaintiff goes on to list various parts of medical reports the ALJ failed to specifically mention. Where the ALJ does discuss medical findings, the plaintiff claims he has not adequately explained how those findings support a conclusion that the plaintiff can perform sedentary work. At other points, the plaintiff seems to mischaracterize, or at least misunderstand, the evidence of record in her attempt to undermine the ALJ's opinion.

While it is true that an ALJ must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning, it is also true that he is not required to address every piece of evidence. *Johansen v. Barnhart,* 314 F.3d 283, 287 (7th Cir. 2002). The ALJ in this case discussed every relevant medical report in the record. The objective medical evidence, as the ALJ accurately characterized it, reveals only minor changes in plaintiff's lumbar spine. Doctors have interpreted plaintiff's x-rays as demonstrating, at most, either *no* degenerative changes (R. 260), *possible* degenerative changes (R. 276), or *probable* degenerative changes (R. 207). Most recently, an MRI demonstrated only "*very minor*" disc degeneration. (R. 357). This is medical evidence that establishes a minor back impairment, as the ALJ correctly concluded, and not one that would disable an individual from performing any level of work. The residual functional

capacity assessments of both examining and reviewing physicians have ranged from medium work (R. 248-54; 286-93) to sedentary work. (R. 364-68; 380-81). Accordingly, the ALJ determined that plaintiff retains the capacity to perform sedentary work. That means work that is performed mostly while sitting, with occasional – no more than two hours total out of a work day – walking or standing. 20 C.F.R. §§ 404.1567(a); 416.967(a); *Walker v. Bowen*, 834 F.2d 635, 642 (7th Cir. 1987). It is the least demanding of all work from a physical standpoint. The ALJ's finding takes into consideration limitations, so far as they find support in the record, stemming from plaintiff's back pain, and right leg pain. The record simply fails to establish that plaintiff suffers from a condition that is any more serious than one which would limit her to sedentary work.

It is true as plaintiff points out (*Motion to Reverse*, at 18, 20-21), that clinical testing, such as neurological tests and range of motion studies, yielded positive results on various occasions. Overall, however, these positive results were not sufficiently significant to preclude sedentary work. For example, plaintiff's lumbar spine flexion was minimally limited to 80 degrees out of 90 on two occasions. (R. 246, 267). As the ALJ noted, there is no evidence that plaintiff is in any way limited in the use of her upper extremities (R. 20-21), as the results of strength and other testing, generally, were nearly normal. (R. 246, 268, 362). Notably, on two occasions when plaintiff demonstrated more significant limitations, the examining physicians felt they might not be indicative of plaintiff's condition. Dr. Elmes noted that plaintiff demonstrated some "over-reaction"

to neurological testing. (R. 363). Dr. Hamilton felt plaintiff's complaints were exaggerated in view of her physical findings. (R. 376). Overall, there is very little evidence in the record, if any, to suggest that plaintiff is incapable of performing the modest demands of sedentary work and, interestingly, plaintiff does not point to and develop any throughout her oversized brief. As such, we must conclude that the ALJ's finding that plaintiff can perform sedentary work is supported by substantial evidence.

Similarly, plaintiff feels the ALJ failed to adequately address her depression. Again, however, the ALJ did discuss each piece of evidence relating to this issue. (R. 19-20). There were two examinations, one by a psychiatrist and one by a psychologist, and one opinion rendered by a reviewing psychologist. The psychiatrist gave plaintiff a GAF score that indicated she experienced only mild symptoms of depression (R. 274), and was unable to identify any disabling effects that plaintiff's depressed mood might have. (R. 275). The reviewing psychologist found that plaintiff did not have a severe mental impairment. (R. 277-285). The examining psychologist, on the other hand, diagnosed a possible schizophrenic disorder and dysthymia. (R. 387). She found plaintiff's abilities to be more adversely affected, but still in the range of fair to good. (R. 387-88). The ALJ properly weighed this evidence and determined that the plaintiff did not have a severe mental impairment. Based on the record – and notably, plaintiff herself did not provide any evidence of a mental impairment – the ALJ's determination was supported by substantial evidence.

Many of plaintiff's criticisms of the ALJ's decision are, as already noted, based on mischaracterizations or misunderstandings of the record, which tends to suggest that plaintiff can find very little at all wrong with the ALJ's decision. One example, already addressed, is plaintiff's insistence that a non-severe impairment could meet the Listings of Impairments, despite the sequential evaluation. Another is plaintiff's contention that Dr. Elmes did not state she was over-reacting to neurological testing (*Motion to Reverse*, at 20), a contention that simply ignores the doctor's report. (R. 363). Plaintiff also, rather curiously, complains that the ALJ paid no attention to "motor weakness in the range of 4 to 4+/5 on the right side." (*Motion to Reverse*, 21). If plaintiff's strength was 4 or 4+ on a five-point scale, however, that would lend little support to a claim that she cannot even perform sedentary work. It would demonstrate, as the doctor termed it, only *mild* weakness. (R. 375).

Plaintiff's memorandum continues with some additional attempts to send the court on a fool's errand. Plaintiff contends that the ALJ failed to adequately consider the effects of her being obese under Social Security Ruling ("SSR") 02-01p, arguing that her obesity is documented throughout the record. (*Motion to Reverse*, at 19 (*citing* R. 245, 267, 361, 364)). First, and most obviously, an SSR promulgated in 2002 would not have been available to an ALJ rendering a decision in 2001. Second, and more to the point, in order for obesity to considered an impairment, it must be diagnosed by a treating source or a consultative examiner. SSR 00-3p, 2000 WL 33952015 *2. Here, only one examining

16

physician diagnosed obesity – Dr. Elmes in January of 2001 – and he diagnosed exogenous obesity.[3] (R. 364). At that time plaintiff – who is 5'3" – weighed 176 pounds. (R. 362). Dr. Elmes did not indicate whether plaintiff's weight might affect her ability to work. Indeed, plaintiff had been able to work when she weighed 145 pounds, four years earlier. (R. 243). There is no indication in the record that the extra 30 pounds rendered her disabled. In March of 1999, for example, physicians prescribed a course of exercise for physical therapy despite plaintiff's 176 pounds. (R. 265-66). It would be mere speculation, given the evidence of record, to suggest that plaintiff's weight prevents her from working. In fact, this evidence suggests plaintiff may have a propensity to exaggerate as she described her weight gain since she had worked as 50, as opposed to 30, pounds. (R. 361).

Finally, plaintiff questions the ALJ's characterization of an x-ray report from June of 1999 as revealing "minimal degenerative changes. (*Motion to Revers*, at 19, *citing* R.18, 276). It is unclear exactly what plaintiff's trouble is here, as the report clearly states that there is no evidence of fracture, disc narrowing, or spondylolisthesis. Further, the x-ray could support only the suspicion of some degenerative joint changes. (R. 276). The ALJ's characterization of the degenerative changes as minimal, then, is clearly supported by the report. Even more curious is plaintiff's contention that the report's reference to

---

[3]  Obesity as a result of overeating. Dorland's Illustrated Medical Dictionary, at 1166 (28th Ed. 1994).

17

"six lumbar vertebral bodies" might be evidence of "major chronic lower back pain." (*Motion to Revers*, at 19). It would seem self-evident that these "six lumbar vertebral bodies" are those depicted in the lumbar x-ray: L1 through S1. Unless the x-ray showed something was wrong with these lumbar bodies, they are not evidence of anything other than the fact plaintiff has a lumbar spine.

This is a case in which the objective medical evidence simply fails to show that plaintiff suffers from anything more than a mild back impairment. The clinical findings may suggest that plaintiff's condition is a bit more severe, or might be interpreted as evidence of exaggeration on plaintiff's part. The evidence regarding plaintiff's depression, overall, similarly depicts a very mild symptoms. Judging by the exchange at plaintiff's hearing, this should come as no surprise to plaintiff's counsel, who could do nothing more, it would seem, than point out very minimal mistakes in the ALJ's opinion – which for the most part turned out not to be mistakes at all. Accordingly, we affirm the ALJ's decision that plaintiff is not disabled as supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED, and the plaintiff's motion for summary judgment or remand is DENIED.

ENTERED: /s/ Edward A. Bobrick
EDWARD A. BOBRICK
U.S. MAGISTRATE JUDGE

**DATE:** November 19, 2003